# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **SULTAN OIL CO. et al,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. CIV-19-175-CBG |
| ) | |
| **TRINITY OPERATING (USG), LLC,** ) | |
| **and WSGP Gas Producing, LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

Now before the Court is Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. No. 40). Defendants have responded in opposition to the Motion (Doc. No. 41), and Plaintiffs have replied (Doc. No. 42). The Court makes its decision based on the parties' written submissions.

### BACKGROUND

Plaintiffs Sultan Oil Company ("Sultan"), Heritage Royalties, Inc. ("Heritage"), Carol W. Byrd as Trustee of the Carol W. Byrd Trust ("Byrd Trust"), Carol W. Byrd as Trustee of the ARK Trust ("ARK Trust"), and Chester Oil Company ("Chester") initiated this action against Trinity Operating (USG), LLC ("Trinity") for breach of contract, accounting, and violation of the Production Revenue Standards Act ("PRSA"). *See* Pet. (Doc. No. 2-1). On June 25, 2019, Plaintiffs filed an Amended Complaint adding WSGP Gas Producing, LLC ("WSGP") as a defendant on all three claims (Doc. No. 6). The Amended Complaint is predicated on the following allegations:

- Sultan, Heritage, the Byrd Trust, and the ARK Trust own mineral interests in certain oil and gas wells in Hughes County, Oklahoma ("Hughes County Wells"). Am. Compl. ¶¶ 12-14. Chester holds overriding royalty interests ("ORRI") in some of the Hughes County Wells, which it acquired by assignment ("ORRI Assignment"). *Id.* ¶ 15.

- The Hughes County Wells were drilled and completed pursuant to a series of oil and gas leases, which were executed by Sultan, Heritage, the Byrd Trust, and the ARK Trust or to which they succeeded in interest ("Hughes County Leases"). *Id.* ¶ 16.

- Trinity and WSGP own all or part of the working interest in the Leases. *Id.* ¶¶ 18, 26-27.

- Trinity and WSGP improperly deducted expenses from Plaintiffs' royalty and ORRI payments and failed to supply Plaintiffs with information related to production and revenue. *Id.* ¶¶ 17, 28, 29, 34.

On July 23, 2019, Trinity and WSGP (collectively, "Defendants") moved to dismiss the Amended Complaint. *See* WSGP's Mot. to Dismiss (Doc. No. 20); Trinity's Mot. to Dismiss (Doc. No. 21). On June 11, 2020, the Court issued an order granting in part and denying in part the Motions to Dismiss. *See* Order of June 11, 2020 (Doc. No. 29). The Court held that Plaintiffs could proceed on the following claims:

1. the claims of all Plaintiffs that Defendants breached the implied duty to obtain marketable product by deducting expenses from their royalty and ORRI payments;

2. Sultan's claim that Trinity breached the Leases' "Access to Information" provision;

3. the claims of Sultan, the Byrd Trust, and the ARK Trust that Defendants breached the Leases' "No Deductions" provision;

4. the claims of all Plaintiffs that Defendants violated the PRSA (Okla. Stat tit. 52, § 570.10(C)(4)) by improperly deducting expenses from their royalty and ORRI payments;

5. Sultan's claim against Trinity for legal accounting; and

2

      6. the claims of all Plaintiffs for equitable accounting.

On August 14, 2020, the Court entered a Scheduling Order (Doc. No. 37) setting January 29, 2021 as the deadline for filing motions to join additional parties and to amend pleadings.[1] On January 5, 2021, Plaintiffs filed the instant Motion seeking leave to amend their pleading in order to "simplify and streamline" their claims and to add a third defendant, WSGP Gas Producing (Arkoma), LLC ("WSGP Arkoma"), alleged to be a corporate affiliate of Trinity and WSGP, which, on or about August 26, 2019, acquired the working interest in various oil and gas leases executed by Plaintiffs.[2] Pls' Mot. at 3. Plaintiffs have attached a proposed Second Amended Complaint ("SAC") as an exhibit to their Motion. *See* Pls' Proposed SAC (Doc. No. 40-1).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) directs district courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this rule, district courts enjoy wide discretion to permit amendment "in the interest of a just, fair or early resolution of litigation." *Bylin v. Billings,* 568 F.3d 1224, 1229 (10th Cir. 2009). Leave to amend should be denied only upon "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously

---

[1] By joint request of the parties, the Court entered an Amended Scheduling Order on March 4, 2021. *See* Am. Scheduling Order (Doc. No. 44).

[2] Plaintiffs allege that WSGP Arkoma "is a sister entity of Trinity and WSGP" insofar as "all three entities are wholly-owned subsidiaries of Next Era Energy, Inc." Pls' Mot. at 4.

allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City, and Cnty. of Denver,* 397 F.3d 1300, 1315 (10th Cir. 2005) (internal quotation omitted).

## ANALYSIS

Plaintiffs identify two objectives for their requested amendment: (1) to "simplify and streamline" their pleading; and (2) to add WSGP Arkoma as a defendant. Pl.'s Mot. at 3. Defendants object to the request on grounds of undue delay, prejudice, and futility.

### I. *Undue Delay*

Delay itself does not justify the denial of a motion for leave to amend; the court must find that the delay was "undue." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (explaining that the "[e]mphasis is on the adjective: 'Lateness does not of itself justify the denial of the amendment'") (citation omitted). In evaluating whether delay is "undue," the Tenth Circuit "focuses primarily on the reasons for the delay." *Id.* at 1206. Leave to amend should be denied where the movant provides an inadequate reason for the delay or provides no reason at all. *Frank v. U.S. West,* 3 F.3d 1357, 1365–66 (10th Cir. 1993); *see also Durham v. Xerox Corp.,* 18 F.3d 836, 840 (10th Cir. 1994).

The Court concludes that any delay by Plaintiffs in their pursuit of amendment cannot be fairly characterized as "undue." As an initial matter, Plaintiffs filed their Motion for Leave to Amend within the deadline designated in the Scheduling Order. While not necessarily dispositive of the issue, this fact weighs heavily against a finding of undue delay. *See, e.g., ODG-OU, L.L.C. v. Pierce Prop. Mgmt., LLC*, No. CV-14-229, 2015 WL 13752813, at *2 (W.D. Okla. Aug. 27, 2015); *N. Am. Ins. Agency, Inc. v. Bates*, No. CIV-

12-544, 2013 WL 3238340, at *4 (W.D. Okla. June 25, 2013); *Quazilbash v. Wells Fargo & Co.*, No. 09-CV-0652, 2010 WL 2868189, at *2 (N.D. Okla. July 16, 2010).

Moreover, Plaintiffs correctly note that the case was essentially "on hold from July 2019 until June 2020" during the pendency of Defendants' Motions to Dismiss. Pl's Resp. at 2. Plaintiffs further identify a number of factors that contributed to their delay in seeking leave to amend: (1) the parties were engaged in settlement discussions in the fall of 2020; (2) Plaintiffs' counsel contracted COVID-19 in October 2020, necessitating hospitalization and several weeks of missed work; and (3) Plaintiffs were, for several months, waiting on Defendants to produce certain documents that they anticipated "would bring more clarity to the [their] claims." Pls' Reply at 2-3.

For these reasons, the Court concludes that Plaintiffs did not unduly delay in seeking leave to amend.

## II. Undue Prejudice

The Tenth Circuit has explained that undue prejudice is "the most important[] factor in deciding a motion to amend the pleadings." *Minter*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id.* at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). Notably, "the expenditure of time, money, and effort alone is not grounds for a finding of prejudice." *Bylin v. Billings*, 568 F.3d 1224, 1230 (10th Cir. 2009). Nor is it enough to show "that amendment will require additional discovery or will delay trial." *See Bowling v. Rector*, No. CIV-06-859-W, 2006 WL 8436354, at *1 (W.D. Okla. Dec. 15, 2006).

Defendants first complain that the addition of WSGP Arkoma would "add entirely new mineral interests and new wells to the litigation." Defs'. Resp. at 7-8. Indisputably, this is true.[3] But Defendants do not, as they must, explain how the proposed increase in the scope of the lawsuit would prevent them from "preparing their defense to the amendment." *Minter*, 451 F.3d at 1208. It is not apparent that the assertion of claims against a third, yet unnamed party would unfairly prejudice the existing defendants, especially where, as in this case, the claims asserted against the third party involve the same core allegations as the claims asserted against the existing defendants.

More to the point, Defendants had notice of Plaintiffs' intent to pursue claims against WSGP Arkoma as early as July 2020 when the parties filed their Joint Status Report. As such, Defendants cannot claim to be unfairly surprised by the addition of WSGP Arkoma. *See Gordon v. St. James Transports, LLC*, No. CIV-16-1327-F, 2017 WL 10378129, at *2 (W.D. Okla. Nov. 8, 2017) (holding that plaintiffs would not be unduly prejudiced by defendant's amendment of answer to assert an additional defense; reasoning that plaintiffs had "adequate notice" of the defense because it was referenced in defendants' portion of the joint status report).

Defendants additionally complain that the SAC "injects entirely new theories of recovery including fuel, line loss, shrinkage, and Transport and Fractionation." Defs'

---

[3] The parties disagree as to the number of additional wells and leases that would result from the addition of WSGP Arkoma. By Defendants' calculation, adding WSGP Arkoma would increase the litigation by 38 leases and "at least 43" wells. Defs' Resp. at 7. According to Plaintiffs, adding WSGP Arkoma would increase the litigation by only eight leases and 21 wells. Pls' Reply at 5.

Resp. at 2; *see also id.* at 8-12.  The Court need not determine whether the SAC advances claims that are new or, as Plaintiffs contend, merely "more specific."[4]  Pl.'s Reply at 6.  Even assuming the assertion of entirely new claims, Defendants have not shown they will suffer prejudice as a result.  Defendants' assertion that the SAC "[r]aises significant new factual issues" does not, without more, establish undue prejudice.  Defs.' Resp. at 12.

For these reasons, the Court concludes that granting Plaintiffs leave to amend will not unduly prejudice Defendants.

### *III. Futility*

Defendants argue that the SAC is futile insofar as it attempts "to reassert claims that the Court has already dismissed" and to assert "new claims that will not survive a subsequent motion to dismiss." *Id.* at 14.  With respect to claims previously dismissed, the Court agrees with Defendants that the reassertion of such claims would be futile.  *See, e.g.*, *Bradshaw v. Lappin*, 484 F. App'x 217, 221 (10th Cir. 2012) (upholding denial of motion for leave to amend where plaintiff attempted to reassert claims that the court previously dismissed).  Plaintiffs will not be permitted to advance any claims that were dismissed in the Court's Order of June 11, 2020.

The Court reaches a different conclusion with respect to the purportedly new claims.  While Defendants nominally argue that these new claims would "not survive a Rule 12(b)(6) motion to dismiss," they do not meaningfully develop this argument.  Defs' Resp.

---

[4] Plaintiffs claim that, after reviewing monthly settlement states Defendants informally produced in September 2020, "Plaintiffs discovered the true nature and extent of the deductions" referenced in the Amended Complaint and are thus able to articulate their allegations with greater detail in the SAC.  *Id.* at 6-7 (citing SAC ¶¶ 19-23).

at 15. Without adequate briefing on the subject and in the absence of patent deficiencies in the purportedly new claims, the Court concludes that the viability of any new claims would be more appropriately resolved upon the filing of a motion to dismiss. *See Ellsworth v. City of Broken Arrow, Oklahoma*, No. 19-CV-34, 2019 WL 2567660, at *3 (N.D. Okla. June 21, 2019) ("The Court cannot determine based exclusively on the limited argument in Defendants' Surreply, whether the SAC would be subject to dismissal . . . [T]he SAC is not so obviously deficient that the Court can find that it would be subject to dismissal without the aid of the Parties' briefing on this subject.").

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. No. 40) is GRANTED. Plaintiffs may, within 14 days of this Order, file an amended pleading that conforms to the rulings herein. The dates set forth in the Amended Scheduling Order (Doc. No. 44) are hereby STRICKEN. Upon service of WSGP Arkoma, the parties shall promptly confer and jointly submit a proposed amended scheduling order. The Court DENIES AS MOOT Defendants' Motion to Extend Remaining Deadlines (Doc. No. 49).

IT IS SO ORDERED this 12th day of August, 2021.

_____
CHARLES B. GOODWIN
United States District Judge